UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GEORGE WINTER,<br>HOWARD JACOBS, AMY JONES,<br>JAMES SMOLLEN, BILL CORTEZ,<br>FRED TORRES, CHRIS ST. JACQUES,<br>AND TONY SANTOS,<br>    Plaintiffs,<br><br>v.<br><br>STATE OF CONNECTICUT,<br>CONNECTICUT DEPARTMENT OF<br>MOTOR VEHICLES, PHILIPPIA<br>FLETCHER-DENOVELLIS, DAN<br>CALLAHAN, NATALIE SHIPMAN,<br>AND VICTOR DIAZ,<br>    Defendants.[1] | CIVIL ACTION NO.<br>3:14-cv-1139 (VLB)<br><br>October 19, 2016 |

**CORRECTED MEMORANDUM OF DECISION GRANTING AND DENYING, IN PART, DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. ## 53, 63]**

Plaintiffs George Winter ("Winter"), Howard Jacobs ("Jacobs"), Amy Jones ("Jones"), James Smollen ("Smollen"), Bill Cortez ("Cortez"), Fred Torres ("Torres"), Chris St. Jacques ("St. Jacques"), and Tony Santos ("Santos"), employees of the Connecticut Department of Motor Vehicles ("DMV"), bring claims of race and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Equal Protection Clause, pursuant to 42 U.S.C. § 1983, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a), *et seq.*, against Defendants the State of Connecticut and the DMV, and individual defendants Philippia Fletcher-DeNovellis ("Fletcher-DeNovellis"), Dan Callahan ("Callahan"), Natalie Shipman

---

[1] The Court GRANTS Plaintiffs' unopposed motion to withdraw their Second Amended Complaint against Defendants Elizabeth Kranz and James Rio.  *See* [Dkt. #62]

1

("Shipman"), and Victor Diaz ("Diaz") (collectively the "Employer Defendants").[2] The Employer Defendants have moved for judgment on the pleadings and for summary judgment. The Caucasian plaintiffs allege that they were victims of reverse discrimination, claiming that the Defendants promoted a younger African America male applicant instead of them on the basis of his race and age, thereby denying them a promotion on the basis of their race and age. For the reasons that follow, the motion for judgment on the pleadings is GRANTED and DENIED in part, and the motion for summary judgment is DENIED.

I.   **Factual Background**

Plaintiffs allege that during the events in question, they were each employed by the DMV. [Dkt. #23, Second Am. Compl. at ¶ 4]. In 2012, the DMV conducted a promotional exam. [*Id.* at ¶ 13]. In order to be eligible for a promotion, the DMV employee must have served as a Motor Vehicle Inspector for at least four years. [*Id.* at ¶ 14]. For this round of promotions, the DMV initially set a closing date of February 17, 2012, by which point all employees seeking promotion would need to have satisfied the four-year service requirement. [*Id.* at ¶ 15]. At the Police Union's request, the closing date for the position was moved back four days, to February 21, 2012. [*Id.* at ¶ 16].

One of the positions open for promotion was that of sergeant. [*Id.* at ¶ 15]. The plaintiffs allege that the DMV implemented a program called "Temporary Service in a Higher Class," through which applicants were interviewed and temporarily promoted to the sergeant position before their written examinations

---

[2] While Plaintiffs originally brought claims against each individual defendant in both their individual and official capacity, they subsequently withdrew their official capacity claims against Defendant Diaz.  *See* [Dkt. ## 48-49].

2

were graded. [*Id.*]. An African American male, Robert Tyson ("Tyson") and each of the Plaintiffs applied for the sergeant position and took the sergeant examination. None of the Plaintiffs are African-American and all are over forty years old. [*Id.* at ¶ 37].

In the course of reviewing the personnel files of each of the applicants for the position, Defendant Fletcher-DeNovellis, a human resources employee, discovered that the date on which Tyson began his employment with the DMV had been inaccurately recorded in the agency's computer system. [*Id.* at ¶ 18]. On March 20, 2012, Fletcher-DeNovellis advised all applicants scheduled for interviews on March 21 and March 23, 2012 that the interviews had been postponed indefinitely. [*Id.* at ¶ 17]. The next day, March 21, 2012, the agency notified Tyson that he was not eligible to sit for the sergeant exam, based on the February 21, 2012 closing deadline. [*Id.* at ¶ 19].

Two days later, on March 23, 2012, Tyson appealed the denial of his eligibility to take the sergeant exam, and he claimed that in denying his application, the DMV discriminated against him on the basis of his race and age. [*Id.* at ¶ 20]. On March 27, 2012, Tyson filed a formal complaint against the DMV and James Rio, a Division Chief at the DMV. [*Id.* at ¶ 21]. The complaint alleged that Tyson was denied the opportunity for promotion because he was an African-American and the youngest candidate who applied for a promotion. [*Id.*]. Plaintiffs contend that Tyson's formal complaint was never investigated. [*Id.* at ¶ 22].

On April 27, 2012, a new sergeant exam was announced, with a closing date of May 11, 2012. [*Id.* at ¶ 23]. Tyson and another police inspector, whose race and age are not disclosed, had sufficient tenure to qualify for promotion to sergeant

3

based on the later closing date. [*Id.* at ¶ 24]. On the same day as the closing date, May 11, Tyson withdrew his formal complaint. [*Id.* at ¶ 25]. After the closing date, a four-person interview panel was assembled to conduct interviews on June 28, June 29, and July 6, 2012. [*Id.* at ¶¶ 26-27]. The panel consisted of Chief Rio, whom Tyson named in his March 27, 2012 complaint, Elizabeth Kranz, a branch manager, and Defendants Fletcher-DeNovellis and Diaz, Deputy Commissioner of the DMV. [*Id.* at ¶ 27]. In light of Tyson's allegations, Rio sought to remove himself from the panel, but Defendant Callahan, who was aware of the substance of Tyson's complaint, encouraged Rio to remain on the panel. [*Id.* at ¶¶ 22, 28]. During his interview with the panel, Tyson disclosed the complaint, and the panel members discussed it afterwards. [*Id.* at ¶ 29].

Following the interviews, the panel members prepared a flow chart in which they ranked each of the candidates. [*Id.* at ¶ 30]. Defendant Shipman, the DMV's Equal Employment Opportunity Manager, signed off on the chart, which designated three applicants as "highly recommended." [*Id.* at ¶¶ 12, 31-32]. Tyson was one of the three applicants so designated. [*Id.* at ¶ 32]. Like Callahan, Shipman was aware of and discussed Tyson's formal complaint, though neither she nor anyone else investigated it. [*Id.* at ¶¶ 22, 31]. Thereafter, Tyson and the other applicant were approved for two of the sergeant positions. [*Id.* at ¶ 33]. Neither Tyson nor the other successful applicant had sufficient tenure to qualify to sit for the exam the first time the promotion was posted. [*Id.* at ¶ 33]. All of the Plaintiffs completed the selection process for the sergeant position, but none were selected. [*Id.* at ¶ 34]. Plaintiffs further allege that the selection process did not comply with Conn.

**Gen. Stat. § 5-220, which requires a delegation plan by heads of agencies and a post-procedural audit.  [*Id.* at ¶ 35].**

**II.     Defendants' Motion for Judgment on the Pleadings**

    **A.   Standard for Judgment on the Pleadings**

"After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings is decided on the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  *Barnett v. CT Light & Power Co.*, 900 F. Supp. 2d 224, 235 (D. Conn. 2012) (citing *Hayden v. Paterson*, 594 F.3d 150, 159 (2d Cir. 2010)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

5

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) or Rule 12(c) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see also Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 554 (E.D.N.Y. 2014) ("[E]vidence outside of the pleadings may not be considered by the Court when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(c).").

### B. Plaintiffs' Title VII Claims Against the Individual Defendants, Their § 1983 claims against Defendants the State of Connecticut, the DMV, and the Individual Defendants in their Official Capacity, and Their CFEPA Claims Are Dismissed

The unsustainability of Plaintiffs' Title VII claims against the individual defendants, their § 1983 claims against Defendants the State of Connecticut, the DMV, and the individual defendants in their official capacity, and their CFEPA c are well settled.  "Title VII does not impose liability on individuals . . . ." *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012); *see also Speigel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("[T]he remedial provisions of Title VII . . . do not provide for individual liability.").  Accordingly, Plaintiffs' Title VII claims against individual defendants Fletcher-DeNovellis, Callahan, Shipman, and Diaz are DISMISSED.

CFEPA claims brought against the state, state entities, and individual state employees in their official capacities, like the claims Plaintiffs bring here, are barred by the Eleventh Amendment and the State's sovereign immunity.  *See, e.g., Hubert v. State of Connecticut Dep't of Corr.*, No. 14-cv-00476 (VAB), 2016 WL 706166, at *7 (D. Conn. Feb. 22, 2016) (dismissing official capacity claims

6

under the CFEPA); *Perez v. Connecticut Dep't of Corr. Parole Div.*, No. 3:13-cv-150 (JCH), 2013 WL 4760955, at **4-5 (D. Conn. Sept. 4, 2013) (finding Eleventh Amendment barred CFEPA claims against Connecticut Department of Corrections and the Department of Administrative Services).

The Plaintiffs have failed to establish subject matter jurisdiction over their remaining CFEPA claims because they fail to allege that they received release of jurisdiction notices from the Connecticut Commission on Human Rights and Opportunities ("CHRO"). "For any complaint dismissed pursuant to this subsection, the executive director or the executive director's designee shall issue a release of jurisdiction allowing the complainant to bring a civil action under section 46a-100." Conn. Gen. Stat. Ann. § 46a-83 (West).  The Connecticut Supreme Court has held that an employee "can only bring a civil action against the [employer] if she requests and obtains a release from the commission." *Angelsca Prods., Inc. v. Comm'n on Human Rights & Opportunities,* 248 Conn. 392, 405 (1999).  *See Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010) ("The courts of this District have consistently applied the exhaustion provisions of the CFEPA to dismiss discrimination claims, finding a lack of subject matter jurisdictions where the plaintiff failed to obtain the requisite release prior to pursuing a private cause of action in court.") (citing *Pleau v. Centrix, Inc.*, 501 F. Supp. 2d 321, 328 (D. Conn. 2007) and Conn. Gen. Stat. §§ 46a-100 and 46a-101).  Although Plaintiffs do allege that they received "right to sue" letters from the Equal Employment Opportunity Commission ("EEOC"), *see* [Dkt. #23, Second Am. Compl. at ¶ 38], such letters are insufficient to establish jurisdiction over their CFEPA claims.  *See Sebold v. City of Middletown*, No. 3:05-

7

cv-1205 (AHN), 2007 WL 2782527, at *19 (D. Conn. Sept. 21, 2007) ("A right to sue letter from the EEOC does not permit a person to file a claim with the Superior Court on an employment discrimination cause of action without a release of jurisdiction from the CHRO because the right to sue from the EEOC has no legal significance under the CFEPA.").

While the CHRO and the EEOC have a work-sharing agreement under which a CHRO release of jurisdiction letter suffices to satisfy the federal exhaustion requirement, the terms of that agreement are not reciprocal and do not provide that an EEOC right to sue letter satisfies the CFEPA exhaustion requirement. *Edwards v. William Raveis Real Estate, Inc.*, No. CIV.A. 08-CV-1907JCH, 2009 WL 1407233, at *3 (D. Conn. May 19, 2009), citing *Bogle–Assegai v. State of Connecticut*, 470 F.3d 498, 505 (2d Cir.2006). Accordingly, Plaintiffs' CFEPA claims are DISMISSED.

Finally, Plaintiffs' § 1983 claims against Defendants State of Connecticut, the Connecticut DMV, and the individual defendants in their official capacities fail as a matter of law because the Supreme Court has held "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

"[T]he Eleventh Amendment bars federal courts from accepting such suits brought by private parties against an unconsenting State and its agencies," and it "is thus 'clearly established that the Eleventh Amendment bars section 1983 claims against state agencies.'" *Taylor v. Norwalk Cmty. Coll.*, No. 3:13-cv-1889 (CSH), 2015 WL 5684033, at *14 (D. Conn. Sept. 28, 2015) (quoting *P.C. v. Conn. Dep't of Children & Families*, 662 F. Supp. 2d 218, 226 (D. Conn. 2009)).

8

Accordingly, Plaintiffs' § 1983 claims against Defendants State of Connecticut, the Connecticut DMV, and the individual defendants in their official capacities are DISMISSED.

    C. **The Amended Complaint States Claims Under § 1983 and Title VII Against Defendants State of Connecticut, DMV, Callahan, Shipman, Fletcher-DeNovellis, and Diaz**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Here, the Plaintiffs allege that the Defendants discriminated against them on the basis of their race and age, in violation of the Equal Protection Clause, and that they did so under color of state law, because the Defendants were state employees acting in their official capacities as DMV employees and performing their responsibilities pursuant to state law.  See *id*. at 49-50; *Hayut v. State Univ. of New York*, 352 F.3d 733, 744 (2d Cir. 2013).

"Once action under color of state law is established, [Plaintiffs'] equal protection claim parallels [their] Title VII claim . . . . The elements of one are generally the same as the elements of the other and the two must stand or fall together."  *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (citing and quoting *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d. Cir. 1998) ("In analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, we borrow the burden-shifting framework of Title VII claims.").

Title VII prohibits an employer from refusing to promote an individual "because of such individual's race, color, religion, sex, or national origin."  42

U.S.C. § 2000e-2(a)(1).  Title VII discrimination claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, (1973).  *See, e.g.*, *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012).  Under the *McDonnell Douglas* framework, a plaintiff must set out a *prima facie* case of discrimination by demonstrating: "(1) that plaintiff within the protected group; (2) that plaintiff applied for a position for which he was qualified; (3) that plaintiff was subject to an adverse employment decision; and (4) that the adverse employment decision was made under circumstances giving rise to an inference of discrimination."  *Pippin v. Vernon*, 660 F. Supp. 2d 354, 363 (D. Conn. 2009).  Even at the summary judgment phase, where a plaintiff must put forth evidence in support of each of these elements, the "plaintiff's *prima facie* burden [i]s minimal and *de minimis.*"  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks omitted).  Moreover, "courts in this Circuit have generally held that a plaintiff need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim."  *Consoli v. St. Mary Home/Mercy Cmty. Health*, No. 3:13-cv-1791 (JBA), 2014 WL 3849978, at *4 (D. Conn. Aug. 5, 2014) (quoting *Barbosa v. Continuum Health Partners*, 716 F. Supp. 210, 215 (S.D.N.Y. 2010).  This does not preclude consideration of "the elements of a prima facie case," as these elements may aid the court "in determining whether there is sufficient factual matter in the complaint to give such notice to defendants."  *Id.*

The Plaintiffs have plausibly alleged that they were the victims of discrimination.  They allege facts which call into question the Defendant's

10

motivations in suspending and reinstituting the promotion proses and promoting the Plaintiff. *John Doe v. Columbia University*, 2016 WL 4056034 (2d Cir. 2016). In that case, the Second Circuit held that a university may discriminate against a male student on the basis of his gender in investigating and adjudicating a female' sexual assault complaints where it acts in a pro-female gender biased manner to demonstrate that it takes seriously allegations of sexual assault in order to refute criticism and protect its reputation. Similarly here Plaintiffs claim that Defendants rigged the promoting process in Tyson's favor in response to Tyson's race and age discrimination charge.

The Plaintiffs have plead facts which establish the fourth prong of the *McDonnell Douglas framework,* which facts establish an inference of discriminatory motivation, the court need not address the unsettled question of whether a majority plaintiff must plead background circumstances to sustain a Title VII case in this circuit. In essence they have so pled. However, had they not satisfied the fourth prong, they may not have satisfied the plausibility requirement.

Considering the allegations as a whole, drawing all reasonable inferences and construing the complaint as a whole in the light most favorable to the Plaintiffs, the allegations are sufficient to raise circumstances giving rise to an inference of discriminatory motivations in promoting Tyson. Plaintiffs contend that the DMV commenced a round of promotions in February 2012. *See* [*id.* at ¶¶ 15-16]. In the course of reviewing the personnel files of each of the applicants for the position, Defendant Fletcher-DeNovellis discovered that the start date listed in the DMV's computer system for a black applicant, Tyson, was inaccurate, and

that Tyson was ineligible for a promotion at that time. [*Id.* at ¶ 18]. On March 20, 2012, Fletcher-DeNovellis advised all applicants scheduled for interviews on March 21 and March 23, 2012 that the interviews had been postponed indefinitely. [*Id.* at ¶ 17]. She gave no reason or explanation for the sudden cancellation of the interviews. The following day, March 21, 2012, the DMV notified Tyson that he was not eligible to apply for the sergeant opening, based on the position's closing date of February 21. [*Id.* at ¶ 19]. Two days later, on March 23, 2012, Tyson filed an appeal of this decision, stating therein his belief that the DMV had discriminated against him on the basis of his race and age. [*Id.* at ¶ 20]. Four days later, on March 27, Tyson filed a formal discrimination complaint against both the DMV and its division chief, James Rio. [*Id.* at ¶ 20].

One month after Tyson filed his formal complaint, a new sergeant exam was announced, and the revised closing date permitted Tyson, in addition to at least one other applicant, to qualify for the position. [*Id.* at ¶¶ 23-24]. On the same day applications for the new sergeant position closed, Tyson withdrew his complaint against Rio and the DMV. [*Id.* at ¶ 25].

At no point was his complaint ever investigated, but every person involved in the hiring process, including a panel member and a manager who signed off on the candidate ranking form, was aware of and discussed it. [*Id.* at ¶¶ 12, 31-32]. Tyson was interviewed by an allegedly tainted panel, which included Rio, a direct target of Tyson's earlier complaint. [*Id.* at ¶ 27]. Indeed, recognizing the potential conflict of interest, Rio sought to remove himself from the panel, but Defendant Callahan, who was aware of the substance of Tyson's complaint, encouraged Rio to remain on the panel. [*Id.* at ¶¶ 22, 28]. The remainder of the panel became

12

aware of Tyson's complaint prior to making its promotion decisions because Tyson disclosed it during his interview. [*Id.* at ¶ 29]. After conducting deliberations, which allegedly included discussions of the complaint, it prepared a flow chart, which Defendant Shipman approved, and which ranked Tyson in the top three of all applicants. [*Id.* at ¶ 31].

Tyson was selected for one of the sergeant positions. [*Id.* at ¶ 33]. Plaintiffs further allege that this unusual selection process did not comply with Connecticut law, which required a delegation plan by heads of agencies and a post-procedural audit. [*Id.* at ¶ 35].

Collectively, the procedural irregularities present in this round of promotions, the close proximity in time between Tyson's filing and withdrawal of his complaint and the establishment of a new sergeant position for which Tyson qualified, the composition of the hiring panel, which included one of the individuals Tyson named in his recently withdrawn complaint, the substance of the panel's deliberations, which allegedly included discussions of the complaint, and its decision to promote Tyson permit for the inference that Tyson's promotion was tied to his discrimination complaint. To be sure, this in itself may not establish discriminatory intent, since, even if true, the panel may have had non-discriminatory reasons to consider the withdrawn complaint in deciding to promote Tyson, such as removing the specter of possible litigation. However, these facts do permit for the reasonable possibility that the DMV and the named defendants sought to promote Tyson because of his age and race in order to avoid generating additional evidence in support of any future complaint he or another similarly-situated employee might bring. Accordingly, at this stage, the

13

Court finds that the allegations do raise sufficient circumstances of discriminatory intent to survive the Defendants' motion for judgment on the pleadings.

### III. Defendants' Motion for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted). In addition, determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment, as such are within the sole province of the jury. *Hayes v. New York City Dep't of Corr.*, 84 F. 3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary

judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, 817 F. Supp. 2d 28, 37 (D. Conn 2011). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712, 727 (2d Cir. 2010).

IV. <u>Analysis</u>

  A. <u>Issues of Disputed Fact Remain</u>

Defendants' motion for summary judgment, whose accompanying Rule 56(a)(1) Statement consists entirely of six paragraphs, fails to establish that there are no disputed issues of material fact and that Defendants are therefore entitled to summary judgment. The first paragraph of the Defendants' Rule 56(a) Statement asserts that "[n]o plaintiff in this case has any evidence of age or race based discrimination, by any defendant, against any plaintiff." [Dkt. #63-2. Defs.' Rule 56(a)(1) Statement at ¶ 1]. As an initial matter, this statement is a legal conclusion, and therefore cannot be considered. *See, e.g., Webster v. Pomperaug Reg'l Sch. Dist.*, No. 3:04-cv-1265 (DJS), 2007 WL 987539, at *6 (D. Conn. Mar. 30, 2007) (striking portions of moving defendant's Rule 56(a) Statement which contained legal conclusions). In addition, even if admitted, the fact that the Plaintiffs during their depositions could not identify any particular

15

evidence of age or race discrimination does not mean that no such evidence exists.  Indeed, given that the Defendants exclusively managed and administered the hiring process, it is unsurprising that the Plaintiffs, mere applicants, could not identify how, if at all, the Defendants acted with discriminatory intent during the course of this process.[3]

The second paragraph of the Defendants' Statement admits numerous allegations in the Second Amended Complaint, including (i) the timing of the decision to cancel and then renew the interview process relative to Tyson's filing his formal complaint of discrimination, and his withdrawal of the complaint on the same day applications for the renewed process were closed, (ii) Tyson was not eligible for promotion under the original hiring process, (iii) nobody at the DMV investigated Tyson's complaint, (iv) the hiring panel included Chief Rio, one of the individuals Tyson named in the complaint, (v) Rio sought to remove himself from the panel, but Defendant Callahan, who was aware of the substance of Tyson's complaint, encouraged Rio to remain on it, (vi) the remainder of the panel became aware of and discussed Tyson's complaint prior to making its promotion decisions because Tyson disclosed it during his interview, and (vii) Defendant Shipman approved a flow chart ranking Tyson as one of the top applicants.  See [Dkt. #63-2. Defs.' Rule 56(a)(1) Statement at ¶ 2 (asserting that "the defendants do not dispute the background factual allegations set forth on pp. 5-8, ¶¶ 13-29, 31-34, and 37" of the Second Amended Complaint].

---

[3] The Court does, however, note the insufficiency of Plaintiffs' response in its Rule 56(a)(2) Statement, consisting of a citation to hundreds of pages of deposition transcript and then the entire record of this case.  See [Dkt. #64-1, Pl.'s Rule 56(a)(2) Statement at ¶ 1].

16

Paragraphs three through five of the Defendants' Rule 56(a) Statement contend that Defendant Callahan had no involvement in the hiring process until March 30, 2012, that he cancelled and restarted the process because he believed it was flawed, that Tyson was qualified to sit for the renewed hiring process, and that two Caucasian males in their late forties to early fifties were hired along with Tyson. [*Id.* at ¶¶ 3-5]. While relevant and probative, these facts are not alone sufficient to remove from dispute the issue of whether Tyson's hiring was the product of unlawful discrimination. If anything, they serve to highlight the existence of such a dispute, as they are explanations for some of the circumstances Plaintiffs have set forth, which the Defendants admit, and which the Court has found are collectively sufficient to support an inference of discrimination.

The final paragraph of the Defendants' Rule 56(a)(1) Statement is similarly insufficient to resolve this case. Defendants merely offer testimony from one of the panel members stating that Tyson and the two older Caucasian males were promoted "because a majority . . . believed that these three presented and interviewed best at that time." [*Id.* at ¶ 6]. Again, even accepting this assertion as true, the mere presence of a non-discriminatory motivation does not preclude the existence of a discriminatory one. *See, e.g., Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1221 (2d Cir. 1994) (reversing grant of summary judgment in favor of employer and noting that the existence of a non-discriminatory explanation for an adverse employment action, such as a reduction-in-force, is not alone sufficient to preclude discrimination because "sometimes the validity of a company's legitimate reduction masks, in an

17

individual case, a discriminatory animus"). Moreover, the portions of deposition testimony Defendants rely upon do not establish that the panel selected Tyson for non-discriminatory reasons. The first section of testimony discusses only *Kranz's* view of Tyson's interview and her reasons for rating him highly. *See* [Dkt. #63-14, Ex. K to Defs.' Mot. for Summ. J., Kranz Dep. Tr. at 74:23-77:9]. The second merely establishes that the majority of the panelists rated Tyson in the top three of all applicants. [*Id.* at 84:24-86:8]. It does not offer any evidence as to why the other panelists rated Tyson as they did.

As Plaintiffs note in their Rule 56(a)(2) Statement, numerous issues of fact remain in this case, chief among them, the motivation behind (i) the suspension and rescheduling of the hiring process, (ii) the manner in which the DMV responded to Tyson's formal complaint, and (iii) the decision of the panel members and other DMV staff to promote Tyson. *See* [Dkt. #64-2, Pls.' Rule 56(a)(2) Statement of Disputed Facts].

### B. The Defendants Have Failed to Establish that they are Entitled to Qualified Immunity

The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982), or "insofar as it was objectively reasonable for them to believe that their acts did not violate those rights," *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied,* 505 U.S. 1221 (1992). The doctrine accommodates (on the one hand) the interest in protecting public officials "from undue interference with their duties and from potentially disabling threats of liability," *Harlow,* 457 U.S. at 806,

and (on the other hand) the interests in "deterring public officials' unlawful actions and compensating victims of such conduct." *Elder v. Holloway,* 510 U.S. 510, 511 (1994).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987) (quoting *Harlow,* 457 U.S. at 818-19). In determining whether a particular right was clearly established at the time an official acted, courts typically consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991).

Here, the right alleged by the Plaintiffs—to be free from racial and age discrimination—is clearly defined and supported by decisional law of the Supreme Court and the Second Circuit.  To the extent the Defendants decided not to promote one or more of the Plaintiffs because of their age or race, it would not have been objectively reasonable for them to believe that they were not violating the law by doing so.  Here, the Defendants "rely entirely on the absence of a prima facie case and do not provide any explanation for [their] decision not to promote [Plaintiffs]."  *Looby v. Hartford*, 152 F. Supp. 2d 181, 186 (D. Conn. 2001).  Accordingly, they are not entitled to qualified immunity.  *Id.* at 189-90 (denying qualified immunity to defendants who were alleged to have discriminated against

a Caucasian plaintiff by failing to promote him despite promoting four other Caucasian males where defendants merely relied on fact that half of the available positions were filled by white candidates and failed to put forth any evidence rebutting the plaintiff's claim that he was not promoted because of his race).

IV. <u>Conclusion</u>

For the foregoing reasons, the Employer Defendants' motion for judgment on the pleadings is GRANTED and DENIED in part, and the motion for summary judgment is DENIED.  Trial will go forward on Plaintiffs' § 1983 claims against the individual defendants and on their Title VII claims against the Defendant state entities.  The remaining claims are DISMISSED.

IT IS HEREBY SO ORDERED, ADJUDGED AND DECREED this 19th day of October, 2016 at Hartford, Connecticut.

                                                                   /s/
                                          Vanessa L. Bryant,
                                          United States District Judge